JOSHUA HARLOW *vs.* WILLIAM FISK & another.

The deed of the Proprietors of the West Boston Bridge to Royal Makepeace, dated October 1, 1823, executed pursuant to *St.* 1809, *c.* 12, of all the land on "the easterly side of a creek ; meaning to convey all the land between" certain other specified bounds and said creek, conveyed the flats adjoining to the centre of the creek.

THIS case came before the whole court upon a report of *Bigelow*, J., with an agreement of parties that the whole court should draw such inferences from the evidence as a jury would be authorized to draw, and render such judgment as law and justice might require. The facts appear in the opinion. The arguments were at Boston, in January, 1853.

*R. F. Fuller*, for the demandant.

*E. Buttrick*, for the tenants.

SHAW, C. J. This is a real action, brought to recover several parcels of flats in Cambridgeport. The demandant claims title to these flats, under three several deeds from the Proprietors of the West Boston Bridge to himself, all substantially conveying the same flats; the later being made to correct some formal defect in the previous deed or deeds. They are the same deeds mentioned in the case of *Harlow* v. *Rogers*, decided at the present term, *ante*, p. 291; and to that case we would refer for a statement of the localities, and of the origin and character of the corporation known as the Proprietors of the West Boston Bridge, and the ultimate sale and transfer of their bridge, causeway, and franchise, to the Hancock Free Bridge Corporation, under the authority of the commonwealth. After their transfer to the Hancock Free Bridge Corporation, the Proprietors of the West Boston Bridge, by their deed dated June 22, 1849, conveyed to Joshua Harlow, the demandant, his heirs, and assigns, a certain piece or parcel of land in Cambridge described, beginning at a point on the causeway leading from the bridge formerly called the West Boston Bridge, but now the Hancock Free Bridge, distant forty-four feet in a straight line from the westerly abutment of the bridge upon said causeway, called the Little Bridge, then turning and running northerly, perpendicularly to said causeway, one hundred feet, then turning and running easterly parallel to said causeway eighty-two feet, thence turning and running perpendicularly to said causeway one hundred feet, thence turning and running westerly on said causeway eighty-two feet, to the point of beginning, "together with all the right, title, and interest of said proprietors, to all the flats adjoining the above not previously sold and conveyed."

It will be perceived, that the land here described, lies wholly on the north side of the Little Bridge, here called causeway; that this bridge was built on piles, without draw or provision for navigation, over a creek about three hundred feet wide, being a channel or low place in the flats, filled by every flood

tide, and bare at low water, and that there was near the middle of this creek, a channel, about two feet deeper than the general level of the bottom of the creek, into which the flood tide first entered, and from which the ebb tide last flowed; but this was empty at ordinary low water.

This bridge was treated as part of the causeway extending from the westerly end of the main bridge to the highway in Cambridge, and is called " causeway " in the above description. It will also be perceived, in applying the description to the land, that the parallelogram of eighty-two feet fronting on the Little Bridge, and one hundred feet deep on the north side, lies almost entirely upon the flats making the bottom of the creek, and west of the little channel or thread of the stream running through it; and if the easterly line of the tract thus described varies at all from the line of such little channel, it is because the line described is straight, and that of the channel meandering.

The two parcels of flats demanded in this action are claimed under the above deed; part of it as falling within the specific description, and which, for convenience, is called the parallelogram, and partly from the last clause, " together with all the flats adjoining the above not previously sold and conveyed."

The demandant claims, by force of this deed, one parcel of flats lying on the south side of the causeway, and easterly of the little channel of the creek. [See F on plan, p. 292.] But on the grounds and for the reasons stated in *Harlow* v. *Rogers*, we think no flats on the south side of the causeway passed to the demandant by this deed, as flats adjoining and not previously sold and conveyed.

On the north side of the causeway, the demandant claims all the flats lying adjoining to the parallelogram easterly to the opposite margin of the creek. [See F on plan.] As this creek, as well as the surrounding flats through which it flowed, was bare at low water, and there was no line of low water which would limit the right of a riparian proprietor to low-water mark, under the colony ordinance of 1641, we are not prepared to say that such a deed, with the flats adjoining, would not convey the flats lying against the land to the oppo-

site margin of the creek, if the grantor owned it. We are, then, to look and see whether it was not excluded from the operation of the grant by the qualifying words, "not previously sold and conveyed."

We suppose and assume that the Proprietors of West Boston Bridge, by force of the deeds described in the other case of *Harlow* v. *Rogers*, under their peculiar franchise, did acquire an estate in fee on both sides of this creek, and of the soil of the creek; and the question is, whether they had conveyed it away, before their deed to the demandant.

Two deeds are put in evidence by the tenants, one of the date of 1823, and one of the date of 1827, each from the Proprietors of West Boston Bridge to Royal Makepeace. The latter was of flats lying south of the causeway, and therefore, for reasons stated, may be laid out of the case.

The other was a deed dated October 1, 1823, by the Proprietors to Makepeace. This appears to have been executed pursuant to the special enabling act, *St.* 1809, *c.* 112, and appears to us to have been a valid deed. By this deed, they conveyed to Makepeace a certain lot or lots of land lying on the north side of the causeway erected, &c., " and on the easterly side of the creek in Cambridgeport, and between the entrance of the Cambridge and Concord turnpike and the Little Bridge, so called, meaning hereby to convey all the land belonging to said corporation which lies between the Cambridge and Concord turnpike on the north or northeasterly side, and said causeway on the south side, and the creek in Cambridgeport, which runs under the Little Bridge aforesaid, on the west side; whatever may be the measurements and contents of the same, together with all the privileges, and appurtenances to the premises belonging." This was afterwards conveyed by Makepeace to Skinner and Hurd. But it is not necessary to trace the title further than to say that it was never reconveyed to the grantors.

Then what is the construction of this deed? We think it was to bound this grant, on the west, on the little channel running through the creek, or the thread of the stream. The term " easterly side of the creek," used once in this descrip-

26 *

tion, does not give the easterly line of the creek, as a boundary or limit; but uses it as descriptive of the position; "lying on the easterly side," in contradistinction to the westerly side. In the latter part of the description, the creek, not the side of the creek, is the westerly bound of the triangular tract conveyed. It is, therefore, the ordinary case of land bounding on a creek or watercourse, where neither of the side lines nor the middle line is expressed; the conclusion of law is, that the channel or middle line, or *filum aquæ*, is intended. We are of opinion, therefore, that all that part of the flats in the creek lying easterly of the little channel, or thread of the stream, passed by the Proprietors' previous deed to Makepeace, and was therefore sold and conveyed before their deed to the demandant, and did not pass by the grant to him.

As to the small piece of flats lying between the easterly line of the parallelogram described, and the thread of the creek, we think the demandant is entitled to judgment.

As to the larger parcel, lying north, we think it did not pass, because it was not lying against or opposite to the land, or belonging to it, but more especially because it appears by the evidence that it lies easterly of the channel of the creek, or thread of the stream, and so had been previously sold and conveyed by the deed to Makepeace.

The demandant is, of course, entitled to judgment for the small parcel of flats above described, if embraced in his writ, as we suppose it is, unless a bend of the little channel, or thread of the stream, makes a curve westerly so as to take a portion of the flats, which lies within the easterly straight line of the parallelogram described; for if there be any such portion lying within that line, it had been previously conveyed to Makepeace, and so could not pass by the deed to the demandant.                    *Judgment accordingly.*